1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

RAYMOND A.,

7

Plaintiff,

8

v.

9

ACTING COMMISSIONER OF SOCIAL
SECURITY,

10

Defendant.

Case No. 3:23-cv-5537

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

11

12        Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of

13   defendant's denial of plaintiff's application for supplemental security income ("SSI") and

14   disability insurance benefits ("DIB"). The parties have consented to have this matter

15   heard by the undersigned Magistrate Judge. Dkt. 2. Plaintiff challenges the ALJ's

16   decision finding that plaintiff was not disabled. Dkt. 5, Complaint.

17        On September 10, 2019, Plaintiff applied for SSI and DIB alleging a disability

18   onset date of April 15, 2019. AR 31. Plaintiff's claims were denied initially and upon

19   reconsideration. AR 31. On April 19, 2022, a hearing was conducted by Administrative

20   Law Judge ("ALJ") Robert Campbell; on May 6, 2022, ALJ Campbell issued an

21   unfavorable decision. AR 31-45. The request for review was denied and Plaintiff filed an

22   appeal to this Court.

23        ALJ Campbell determined that Plaintiff had the following severe impairments:

24   degenerative disc disease of the lumbar spine and a learning disability (dyslexia, math

25

1

1   and reading). AR 33. As a result, he determined that Plaintiff has the residual functional

2   capacity (RFC) to perform medium work as defined in 20 CFR 404.1567(C) and with

3   additional limitations. AR 37. Accordingly, the ALJ determined that Plaintiff could

4   perform the following jobs: Automobile Detailer (DOT 915.687-034); Dining Room

5   Attendant (DOT 311.677-018) and Laundry Worker (DOT 361.685-018). AR 45.

6                                    **STANDARD**

7          Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

8   denial of Social Security benefits if the ALJ's findings are based on legal error or not

9   supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874

10  F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such

11  relevant evidence as a reasonable mind might accept as adequate to support a

12  conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations

13  omitted). The Court must consider the administrative record as a whole. *Garrison v.*

14  *Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the

15  evidence that supports and evidence that does not support the ALJ's conclusion. *Id.*

16  The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did

17  not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope

18  of the Court's review. *Id.*

19                                   **DISCUSSION**

20  **1.  Medical evidence**

21         Plaintiff challenges the ALJ's evaluation of the following medical providers: Dr.

22  Stevick, Dr. Hale, Dr. Brown, Dr. Comrie, Dr. Andreoli, and Dr. Schneider. Dkt. 12, at 3-

23  8.

24

25                                         2

Under the 2017 regulations, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how he or she considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).

The Ninth Circuit considered the 2017 regulations in *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). The Court found that "the requirement that ALJs provide 'specific and legitimate reasons'[1] for rejecting a treating or examining doctor's opinion…is incompatible with the revised regulations" because requiring ALJ's to give a "more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources." *Id.* at 792. Under the new regulations,

> an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2).

a. Teresa Andreoli, Psy.D.

Teresa Andreoli, PsyD, conducted a consultative psychological evaluation of Plaintiff on October 4, 2020. AR 401. She diagnosed Plaintiff with dyslexia and found that while his "fund of knowledge was adequate," he struggled on tasks of concentration. She opined that given his back pain and learning disability, Plaintiff would be better suited for trades that are "not so demanding on his back, but that

---

[1] *See Murray v. Heckler,* 722 F.2d 499, 501 (9th Cir. 1983) (describing the standard of "specific and legitimate reasons").

for which he would work with his hands." AR 406. Dr. Andreoli also distinguished between Plaintiff's learning disabilities (which she determined to be "fixed" and not likely to improve), and her assessment of his mental health psychologically, which she found to be non-limiting – "[h}e does not appear to have any extent of psychological issues and mood lability that are of concern." AR 405

The ALJ found her opinion unpersuasive because she did not provide a "function-by-function" assessment of the Plaintiff's RFC. This is not a sufficient explanation to reject Dr. Andreoli's opinion. The ALJ erroneously placed onto Dr. Andreoli a requirement to provide a function-by-function assessment of Plaintiff's RFC, when this physician was not purporting to assess Plaintiff's RFC. *See*, AR 403-405, Mental Status Exam;  AR 405-406, Functional Information, Diagnosis, Prognosis, Capability to Manage Funds, and Functional Assessment. There is no authority that would support such a requirement. The ALJ did not provide any other explanation for finding her opinion unpersuasive; the ALJ erred in evaluating Dr. Andreoli's opinion.

b.   Robert Schneider, Ph.D.

Dr. Schneider diagnosed Plaintiff with a mild neurocognitive impairment during his psychological evaluation of Plaintiff on November 30, 2020 (a previous evaluation [AR 317-324] of Plaintiff was conducted by Dr. Schneider in 2008). AR 408-422. He opined that Plaintiff had seriously impaired memory and significant dyslexic disorder and disorder of written expression. AR 408-422. Dr. Schneider stated that Plaintiff presented as "psychologically and interpersonally undeveloped." AR 413. He further opined that Plaintiff was unable to perform

sedentary employment and would not be able to perform office work due to his problems with reading and memory. AR 420.

Dr. Schneider noted that Plaintiff's memory had deteriorated, and he would "have significant difficulty learning information for a new job, remembering instructions on a day to day basis and learning anything new in the course of employment." AR 419. Processing of information was also significantly impaired, due to a mild neurocognitive impairment. AR 419-422.

The ALJ found that Dr. Schneider's opinion was not persuasive because he offered opinions on the exertional level of the Plaintiff's work and vocational matters that are outside of his area of expertise and for being inconsistent with the record. AR 41.

As for the ALJ's first reason, Dr. Schneider opined that Plaintiff was unable to perform sedentary work due to his reading and memory impairments. AR 41, 421. He added that the availability of sedentary jobs might be rare due to automation. *Id*. The ALJ did not err in stating that Dr. Schneider's opinion about viable employment placement was a vocational conclusion -- outside his area of expertise. There is nothing in the record to suggest that Dr. Schneider possessed the experience or education that would allow for such an opinion on vocational data to be relied upon by the ALJ or by this Court. *See McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011) (noting that a treating physician ordinarily does not have the expertise of a vocational expert).

The ALJ also rejected Dr. Schneider's opinion for being inconsistent with the medical record. For example, the ALJ states that Plaintiff's medical record shows

that he was cooperative, oriented, had an adequate fund of knowledge, could follow three-step commands, possessed intact remote and recall memory and social abilities, and had adequate sustained concentration.

On the contrary, Dr. Schneider found that Plaintiff's "interpersonal intelligence is limited," "his presentation is somewhat phlegmatic and flat," and has "extreme problems with registration memory and retention." AR 413. The ALJ, however, did not consider Dr. Andreoli's October 4, 2020, assessment that Plaintiff struggled on tasks of concentration. For example, while Plaintiff could follow a three-step command, he was unable to perform a serial seven test or spell the word "WORLD" forward or backward. AR 404.

The ALJ also found that Plaintiff engaged in activities that undermined Dr. Schneider's opinion -- he lived by himself, was able to handle his own self-care, drove, did housework, shopped, cooked, and cleaned. AR 39, 42, 405, 411. An ALJ may discount a claimant's testimony based on daily activities that either contradict their testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ fails to explain how Plaintiff's ability to engage in these activities undermines Dr. Schneider's opinion that Plaintiff would have difficulty sustaining a physically demanding job, or otherwise finding employment that could account for Plaintiff's problems with registration memory and retention. AR 420.

Finally, the ALJ notes that Plaintiff has engaged in semi-skilled employment over the years. Working in an occupation for enough hours and with success and continuity, when an impairment is present, supports a conclusion that the impairment is not

disabling. *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (seeking work despite impairment supports inference that impairment is not disabling). However, short-term work, which does not demonstrate the ability to sustain substantial gainful employment, may be considered an unsuccessful work attempt instead of substantial gainful activity. *Gatliff v. Comm'r Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

Here, Plaintiff has been employed in a few short-term positions, such as at Home Depot (sales associate in the lumber department, AR 58) and Enterprise Car Rental (washing and detailing cars, AR 57-58), but was unable to continue the temporary jobs because of his back pain, and after March 2020, COVID-19 related layoffs. AR 409-410. There is not substantial evidence in the record to support the ALJ's decision, because the work was temporary, and Plaintiff was not able to successfully work in full-time gainful employment. AR 64-65, 67, 218, 235, 403. The ALJ's decision acknowledges that these temporary positions did not amount to substantial gainful activity. AR 33. Plaintiff should not be penalized for attempting to work.

 c. Drew Stevick, M.D[2]. and Gordon Hale, M.D.

Plaintiff further argues that the ALJ erred in finding State agency physicians' Dr. Stevick and Dr. Hale's opinions persuasive. Dkt. 12, at 7. The ALJ explained that their assessments were consistent with the overall medical record including

---

[2] The ALJ incorrectly identified Dr. Stevick in the decision, referring to him as Michael L. Brown, Ph.D.

the objective evidence and Plaintiff's routine and conservative treatment including improvement with physical therapy. AR 42. On April 24, 2020, Dr. Stevick completed a residual functional capacity assessment concerning Plaintiff's physical abilities. AR 82-83. In the assessment, it was noted that physical therapy resolved some of Plaintiff's symptoms related to his mild degenerative changes in the lumbar spine. AR 79. Dr. Stevick found that Plaintiff could occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds; he could sit and stand/walk a total of 6 hours each in an 8-hour day; and he could frequently climb ladders, ropes, and scaffolds, stoop, crouch, and crawl. AR 82-83. He needed to avoid concentrated exposure to vibration. AR 83. On September 28, 2021, State agency physician, Gordon Hale, M.D. concurred with this assessment. AR 94-95.

The ALJ stated that even though Plaintiff presented with back pain, poor core strength, and some stiffness during physical therapy with Kathy Bordeaux, PT, he was "discharged from physical therapy" having made good progress with a "significant" decrease in core weakness over four months. AR 39. However, the ALJ's decision overlooked the note from Ms. Bordeaux that Plaintiff was discharged from physical therapy due to his concerns relating to the spread of coronavirus and the recommendations for social distancing. AR 332. This is not equivalent to being discharged for making "good progress."

Further, the State agency physicians and the ALJ failed to consider the effects of Plaintiff's obesity on his ability to perform medium level work. On March 30, 2021, Dr. Charis Mok diagnosed Plaintiff with obesity and reported that his BMI was 31.44. AR 429-30.

1    While obesity is not listed among the Listing of Impairments, it is still classified

2 as a medically determinable impairment that must be considered in disability

3 assessments. SSR 02–1p, 2002 WL 34686281. "In evaluating obesity to determine

4 a claimant's RFC, the ALJ's assessment 'must consider an individual's maximum

5 remaining ability to do sustained work activities in an ordinary work setting on a

6 regular and continuing basis.' " *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir.

7 2005) (quoting SSR 02–1p). "As with other impairments, the ALJ should explain

8 how he determined whether obesity caused any physical or mental impairments."

9 *Id.* (citing SSR 02–1p).

10    Furthermore, SSR 96–8p provides:

11        In assessing RFC, the adjudicator must consider only limitations and
         restrictions imposed by all of an individual's impairments, even those that
12        are not "severe." While a "not severe" impairment(s) standing alone may not
         significantly limit an individual's ability to do basic work activities, it may—
13        when considered with limitations or restrictions due to other impairments—
         be critical to the outcome of a claim.

14

15 *Id.* (quoting SSR 96–8p). Here, the Court agrees with Plaintiff that the ALJ failed

16 to address the impact of obesity on Plaintiff's disability. There is evidence of

17 Plaintiff's high body mass index in the record. Considering this, the ALJ had a duty

18 to assess the impact of obesity on the various steps of the sequential analysis.

19 This did not occur. The ALJ did not discuss whether Plaintiff's obesity constituted

20 a medically determinable impairment or how it potentially impacted Plaintiff's other

21 severe impairments. Similarly, the ALJ never considered Plaintiff's obesity in

22 determining Plaintiff's RFC or ability to perform past relevant work.

23

24

25

Thus, because neither the State agency physicians nor the ALJ considered why the Plaintiff was discharged from physical therapy or considered Plaintiff's obesity diagnosis, the ALJ erred in finding the State agency physicians' opinions persuasive.

d.  Michael Brown, Ph.D., and Matthew Comrie, Psy.D.

Finally, Plaintiff disagrees with the ALJ's findings that Dr. Brown and Dr. Comrie's opinions were persuasive and argues that the opinions lacked support and were inconsistent with the clinical findings of Dr. Paik, Ms. Bordeaux, Dr. Schneider, and Dr. Andreoli. Dkt. 12, at 8. Dr. Paik and Ms. Bordeaux only treated Plaintiff's back pain.

On October 10, 2020, Dr. Brown completed a residual functional capacity assessment. AR 83. Dr. Brown found that Plaintiff had only moderate limitations in his ability to understand and remember detailed instructions. AR 84. Plaintiff had no limitations in his ability to carry out very short and simple instructions but would be moderately limited in his ability to carry out detailed instructions and in is ability to maintain attention and concentration for extended periods. AR 84. Though Plaintiff preferred to be alone by his own report and the reports of his family members, Dr. Brown found that he was able to interact with others when needed. AR 85. He also had no limitations in his ability to adapt and manage given his ability to live independently, drive, shop, and manage his appointments and his funds. AR 85. On September 22, 2021, Dr. Comrie concurred with these findings but concluded that Plaintiff did not have any limitations in his ability to maintain sustained concentration or persistence. AR 95.

1    The ALJ explained that their assessments were consistent with the overall

2   medical record including the objective evidence, including Plaintiff's work history,

3   and Plaintiff's daily activities. AR 42. As discussed above, however, the fact that

4   Plaintiff temporarily worked at Home Depot and Enterprise does not mean that

5   Plaintiff would be able to sustain substantial gainful employment in light of his

6   severe back pain and his learning disabilities. Similarly, while Plaintiff is able to live

7   somewhat independently in his brother's home, handle his own self-care, drives,

8   does housework, shops, cooks, and cleans, the ALJ did not explain how Plaintiff's

9   ability to engage in these daily activities would lead to a conclusion that Plaintiff

10   could sustain an 8-hour workday. Driving, shopping, or doing housework, does not

11   mean that Plaintiff would be able to work without frequent breaks to accommodate

12   his limitations.

13    Thus, the ALJ erred in evaluating the opinions of Dr. Brown and Dr. Comrie.

14    An error is harmless only if it is not prejudicial to the claimant or "inconsequential"

15   to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*,

16   454 F.3d 1050, 1055 (9th Cir. 2006). If the ALJ's errors result in an RFC that does not

17   include relevant work-related limitations, the RFC is deficient, and the error is not

18   harmless. *Id.* at 1052, 1054*; see also, Carmickle v. Comm'r. Soc. Sec. Admin.,* 533 F.3d

19   1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988);

20   *Stramol-Spirz v. Saul,* 848 F. App'x 715, 718 (9th Cir. 2021) (unpublished).

21    In this case, if the ALJ had properly considered the limitations opined by the

22   doctors, the ALJ may have included additional limitations in the RFC assessment and

23   presented those limitations in the hypothetical to the vocational expert, which may have

24

25                                             11

resulted in a different outcome. *See,* AR 69-72. Thus, the ALJ's error was harmful warranting remand.

### 2. Plaintiff's statements regarding subjective symptoms

Next, Plaintiff challenges the ALJ's assessment of his subjective testimony.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In assessing a Plaintiff's credibility, the ALJ must determine whether Plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear, and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

During his hearing, Plaintiff testified that in addition to back pain from lying down, his pain is also caused by sitting down "for long periods of time on something fairly hard," by lifting "something that's a little too heavy," or by reaching for something. AR 58-59. He noted that he has suffered back spasms because of lifting, reaching, and "sometimes sitting on something too hard." AR 59. Plaintiff testified if he "had to stand in on[]e place, like behind a counter and work, [where] you could move your feet a little bit [and "move your feet as you needed to"], you wouldn't be standing . . . completely still or anything like that," he could do so for 30 or 45 minutes. AR 60-61. Further, he estimated that he could lift about 20 pounds repetitively. AR 61. He also estimated that if he "had

to bend down, pick up a case of soda, and put it up on the counter," he could probably do it once. AR 61-62.

With respect to his reading capabilities, Plaintiff stated that sometimes he must read something three, four, or five times before he can understand it and must skip over words he did not understand. AR 62. Plaintiff testified that his mother makes his medical appointments for him, and his brother will help him "with understanding, maybe reading something, or if I don't understand it, or paperwork." AR 63-64.

When asked about his previous job at Home Depot, Plaintiff stated that the job was difficult for him because "[i]t was a lot of lifting and bending over and reaching that I was having a problem with. And . . . looking up things on the device that they had for locating something for a customer, because I have a problem spelling, and it doesn't really have a spell-check on it . . ." AR 64. He confirmed that it was physically difficult or uncomfortable for him to do the work at Home Depot, as it was hard for him to lift the bags of concrete, and some of the bigger lumber material. AR 67.

The ALJ found that Plaintiff's testimony concerning the severity of his impairments was not persuasive based on the overall medical record.

For the same reasons this Court has determined that the ALJ improperly considered the medical opinion evidence, the ALJ also erred by improperly discounting Plaintiff's testimony, while failing to consider evidence from the record supporting his testimony. As discussed above, the ALJ failed to consider why Plaintiff stopped physical therapy and improperly concluded that Plaintiff's past employment and daily activities means that Plaintiff is able to sustain gainful employment.

1    In sum, the ALJ failed to give specific, clear, and convincing reasons for rejecting

2    Plaintiff's testimony. An error that is inconsequential to the non-disability determination

3    is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). If

4    the errors of the ALJ result in a residual functional capacity (RFC) that does not include

5    relevant work-related limitations, the RFC is deficient, and the error is not harmless. *Id.*

6    Here, Plaintiff's subjective testimony evidence suggested he was limited in several ways

7    not reflected in the RFC: he testified that he could lift only 20 pounds frequently, suffers

8    from back spasms, and requires assistance from his mother and brother to understand

9    things that he cannot. Thus, the ALJ's error in failing to give specific, clear, and

10   convincing reasons was not harmless.

11   **3.  Statements from Plaintiff's Mother and Brother**

12   Finally, Plaintiff next asserts that the ALJ erred in discounting Plaintiff's brother's and

13   mother's lay witness written statements. The ALJ is "not required to articulate" how they

14   evaluated evidence from non-medical sources such as educational personnel, public

15   and private social welfare agency personnel, and other lay witnesses. 20 C.F.R. §

16   404.1502(e). Yet, the Ninth Circuit has suggested that its pre-2017 standard requiring

17   "germane" reasons to reject lay witness testimony applies to an ALJ's evaluation of lay

18   witness testimony post-2017. *Muntz v. Kijakazi*, No. 22-35174, 2022 WL 17484332, at *

19   2 (9th Cir. Dec. 7, 2022) (applying "germane reasons" standard to ALJ's evaluation of

20   third-party function report from claimant's husband).

21   Plaintiff's mother testified:

22   Plaintiff's disabilities have manifested in a number of different ways that
     affect his life. Physically, because of hard physical labor in his earlier life
23   compounded with his aging body[,] he has to limit what he is able to do
     physically and the duration time of how long he does it for. To function
24

25

daily he needs a structured daily routine and even then he can often be indecisive and become visibly distressed when interrupted. He communicates very little with anyone except for his brother and myself.

AR 307-08.

Plaintiff's brother testified that as a sixth-grade teacher himself, he can see the same problems his brother faces as his young students encounter on a daily basis. AR 310. He discussed Plaintiff's employment with Home Depot and Enterprise and stated that Plaintiff had to "struggle along in a physical job that his aging body could not tolerate much longer. His body ailments eventually caused him too many problems, leading him to call in sick too many times, ultimately affecting his job continuation." AR 310-313.

The ALJ erred as a matter of law in rejecting these lay witness statements. Although Plaintiff's record showed imaging reports consistent with mild impairments, and his mental status examination results showed that he was "cooperative, "oriented" and had an "adequate sustained concentration and persistence," this is not a germane reason to reject his mother's or brother's testimony regarding Plaintiff's struggle with decision-making and how his back pain and learning disability in general continuously affect him and his ability to sustain employment.

Thus, the ALJ erred in finding the lay witness statements unpersuasive.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings, including a de novo hearing, where the ALJ would review the medical evidence, the Plaintiff's statements about symptoms

and limitations, and the evidence presented by lay witnesses, allowing Plaintiff to

present additional evidence.

Dated this 22nd day of May, 2024.

Theresa L. Fricke
United States Magistrate Judge